# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. HARDY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:19-cv-00277-JRG-RSP |
| | § | |
| CARTHAGE INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss Plainitff's Amended Complaint and Brief in Support, filed by Defendant Carthage Independent School District ("CISD"). Dkt. No. 8. On October 22, 2021, the Court held a scheduling conference. Dkt. No. 11. The Court asked the parties to file supplemental briefing on several issues in connection with the Motion. On January 10, 2022, the Court held a hearing and heard oral argument on the Motion and supplemental briefing. Dkt. No. 21. The Motion should be **DENIED**.

At the hearing, CISD withdrew its assertion that Plaintiff's service on CISD was improper, or otherwise ineffectual, while maintaining the defense that service was untimely.

## I.     BACKGROUND

On July 31, 2017, Plaintiff Christopher B. Hardy's employment with CISD was terminated. Dkt. No. 17 at 3.[1] Around October 2017, Plaintiff filed a petition alleging racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). Dkt. No. 5 ⁋ 59. On May 13, 2019, the U.S. Department of Justice issued Plaintiff a right to sue notice pursuant to Title VII. *Id*.

---

[1] Citations are to document numbers and page numbers assigned through ECF.

¶ 60. On August 12, 2019, Plaintiff filed this lawsuit against CISD. Dkt. No. 1. At the time this suit was filed, Mr. Sufi Nasim Ahmad was representing Hardy. Dkt. No. 18 at 1. On November 12, 2019, Mr. Ahmad filed a motion for an extension of time to serve CISD. Dkt. No. 2. That was the last action Mr. Ahmad performed on behalf of his client to continue this litigation. On August 2, 2021, Plaintiff moved to substitute counsel and filed an Amended Complaint. Dkt. No. 4; Dkt. No. 5. On August 31, 2021, Plaintiff served Defendants. CISD answered the operative pleading at the time and now moves for dismissal of this action. Dkt. No. 8; Dkt. No. 9. On January 11, 2022, the Court ordered Plaintiff to file an amended pleading by January 24, 2022. Dkt. No. 23. Plaintiff has done so. Dkt. No. 25.

## II. LEGAL STANDARD

### A. Statute of Limitations for Causes of Action Under 42 U.S.C. § 1981

"Under Fifth Circuit precedent, section 1981 creates an independent cause of action against private actors, but for suits such as this one against state actors, 'plaintiffs must assert a cause of action . . . under § 1983 to remedy violations of civil rights under § 1981.'" *Rothrock v. Gorman*, No. 3:12-cv-00241, 2013 WL 3461913, at *2 (S.D. Tex. July 1, 2013) (J., Costa) (alteration in original) (citing *Oden v. Oktibbeha County*, 246 F.3d 458, 463 (5th Cir. 2001)). Neither sections 1981 nor 1983 have an express statute of limitations. *Id*. In situations where a cause of action does not have a statute of limitations, Federal Courts are to "apply 'the most appropriate or analogous state statute of limitations' to claims based on asserted violations of § 1981." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (quoting *Goodman v. Lukens Steel Co.*, 482 US 656, 660 (1987)). Personal injury claims are considered the most analogous for sections 1981 and 1983. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (noting that courts traditionally apply a state's

personal injury limitations period in a section 1981 claim). Personal injury claims have a two-year statute of limitations in Texas, so typically claims under 1981 and 1983 have a two-year statute of limitations. *See Piotrowski*, 237 F.3d at 576.

However, "Congress enacted a catchall 4–year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." *Jones*, 541 U.S. at 371 (citing 28 U.S.C. § 1658). The Civil Rights Act of 1991 changed section 1981. "As first enacted, § 1981 provided in relevant part that 'all persons [within the jurisdiction of the United States] shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens.'" *Id*. at 373 (quoting 42 U.S.C. § 1981). Section 1981was amended by altering the definition of "'make and enforce contracts' to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id*.

### B. Federal Rule of Civil Procedure 4(m)

Federal Rule of Civil Procedure 4(m) states:

> Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

"Rule 4 permits a district court to dismiss an action without prejudice if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff can show good cause for the failure." *King/Morocco v. Sterling McCall Lexus*, 776 Fed. Appx. 235, 235 (5th Cir. 2019) (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)).

> "When service of process is challenged, the serving party bears the burden of proving . . . good cause for failure to effect timely service." Proof of good cause requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Additionally, some "showing of good faith on the part of the

3

party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required."

*Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (footnotes and citations omitted).

When considering granting a dismissal, the Court should generally find "at least one of three aggravating factors: (1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Id.* at 514 (quotations and citations omitted) (alteration in original).

"Even if the plaintiff lacks good cause, the court has discretion to extend the time for service." *Id.* at 511 (citing *Millan v. USAA GIC*, 546 F.3d 321, 325 (5th Cir. 2008)). "A discretionary extension may be warranted, 'for example, if the applicable statute of limitations would bar the refiled action . . . .'" *Millan*, 546 F.3d 321, 325 (5th Cir. 2008) (citing Fed. R. Civ. P. 4(m) advisory committee's note (1993)).

C. **Federal Rule of Civil Procedure 12(b)(6)**

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). A complaint states a sufficient claim if it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citations omitted).

When considering a Rule 12 motion to dismiss, a court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). The court must then decide whether those facts "state a claim that is plausible on its face." *Bowlby*, 681 F.3d at 219.

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 556).

III. ANALYSIS

A. Statute of Limitations for Plaintiff's § 1981 Claim[2]

CISD argues that Plaintiff's discrimination claims are time barred because his claims were filed past the two-year filing deadline. Dkt. No. 17 at 2–3. CISD submits that the termination action by CISD occurred on May 31, 2017 giving Plaintiff until May 31, 2019 to file suit. *Id*. Plaintiff, however, filed suit on August 12, 2019. Dkt. No. 1.

Plaintiff asserts that the two-year statute of limitations does not apply to the pleaded causes of action, rather Plaintiff contends the four-year statute of limitations is applicable. *See* Dkt. No. 19 at 2. Plaintiff submits that actions for "post-employment discrimination"[3] were only possible

---

[2] CISD states that Plaintiff is seeking to vindicate allegedly discriminatory actions occurring in 2014. CISD is mistaken. Plaintiff is merely citing those actions as circumstantial evidence to support his 2017 discriminatory termination claim—not as an independent cause of action. In the interest of caution the Court recommends dismissing any causes of action that arise from incidents of discrimination occurring in 2014. The statute of limitations has long since run. However, the dismissal will not preclude Plaintiff from using the alleged events as evidence to support his other claims. *See AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

[3] Plaintiff describes "post-employment discrimination" as causes of action arising from discriminatory behavior after the employee is hired. *See* Dkt. No. 19 at 2.

after the enactment of The Civil Rights Act of 1991 and are subject to 28 U.S.C. § 1658. *See id*. at 2–3.

The central question the Court must answer is whether to apply the statute of limitations for a section 1981 claim or whether section 1983's statute of limitations applies. The Supreme Court has held that when a cause of action is created by section 1981, but asserted through 1983, the underlying right's (i.e. section 1981) statute of limitations applies. *Jones*, 541 U.S. at 382 ("[A] cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.") (alteration in original)); *accord Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 367–68 (5th Cir. 2008) ("[I]f Mitchell's causes of action arise under a federal statute enacted after December 1, 1990, we must apply a four-year statute of limitations."); *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337-1339 (11th Cir. 2008) (same). The Court must determine whether "the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Jones*, 541 U.S. at 382 (2004).

Although the Fifth Circuit has never answered this question in a published opinion, the Court finds that *Mitchell* and *Baker* are persuasive authority. *See Mitchell*, 265 Fed. Appx. at 367–68; *Baker*, 531 F.3d at 1337-39. In *Mitchell*, the Fifth Circuit reasoned that, in view of the Supreme Court's *Jones* precedent, any "wrongful termination, refusal to transfer, and hostile work environment related to [] then-current employment, [] all arose under the 1991 revision to the Civil Rights Act and therefore require[s] the imposition of the federal four-year statute of limitations." 265 Fed. Appx. at 368. The Fifth Circuit has held that the Civil Rights Act of 1991 "made clear that [the amended] § 1981 reaches post-formation conduct," unlike the previous 1981. *Id*. at 369.

The Eleventh Circuit has come to same conclusion. That court found that wrongful termination claims deriving from section 1981, and asserted through 1983, "arise under a post-1990 Act of Congress. Were it not for the 1991 [Civil Rights] Act, Baker's complaint would fail to state a claim under § 1983." *Baker*, 531 F.3d at 1339.

In view of these authorities, Plainitff's section 1981 post-employment discrimination claim should be given a four-year statute of limitations and not be considered time barred. Defendant's grounds of dismissal based on the statute of limitations should be **DENIED**.

  **B.**  **Plaintiff's Timeliness in Serving Process**

    **1.**  **Timeliness under Federal Rule of Civil Procedure 4(m)**

CISD argues this suit should be dismissed, under Rule 4(m), because service of Plaintiff's complaint was delayed by approximately two years. Dkt. No. 8 at 6 (Explaining Plaintiff served Defendant on August 31, 2021 approximately two years after the suit was filed). Defendant argues Plaintiff's two year delay "surpasses any kind of good-faith delay in service . . . . Plaintiff's attempt to revitalize a claim that was not served on the Defendant for over two years is far short of the excusable neglect threshold." *Id*. at 7.

Plaintiff "concedes he lacks 'cause' as that term is defined in Fifth Circuit law for his failure to serve the complaint" but that the Court should exercise its considerable discretion and extend service through August 31, 2021. *See* Dkt. No. 19 at 7. Plaintiff urges this Court to consider the equities and circumstances of the Plaintiff's situation that led to his delay and extend service through August 31, 2021. *See id*. In particular, Plaintiff highlights the Supreme Court's distinction between attorney negligence and attorney abandonment. *See id.* (citing *Maples v. Thomas*, 565 U.S. 266, 268 (2012)).

"If good cause is present, the district court must extend time for service. If good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service." *Thompson*, 91 F.3d at 21. Plaintiff, however, concedes that under Fifth Circuit precedent he cannot show "good cause," so the Court need not address whether "good cause" is present.

The only question remaining is whether under these circumstances the Court should exercise its discretion to excuse the delay. Plaintiff has presented an unusual situation where his original counsel first mislead him into believing his lawsuit had been served, assured him that his case was progressing, and eventually ceased communicating with Plaintiff at all (as well as refusing to communicate even with relatives). *See generally* Dkt. No. 18. On August 12, 2019, Plaintiff reached out Mr. Ahmad to have a claim against CISD filed in this Court. *Id*. at 8–9. After August 12, 2019, Plaintiff would regularly email Mr. Ahmad seeking status updates. *Id*. at 4–5. Many of Plaintiff's emails were met with silence. However, from time-to-time Mr. Ahmad would respond to Plaintiff with an excuse for his failure to communicate or with misinformation about the case. *See generally id*. at 3–8. After many unanswered emails, on February 24, 2020, Plaintiff was eventually able to confirm, from Mr. Ahmad's brother (not Mr. Nasim Ahmad) that the lawsuit had been filed. *Id*. at 7. At that time the Plaintiff was informed that the lawsuit had been filed but still needed to be served on CISD. *Id*. The next day, Mr. Ahmad followed-up and stated, "my understanding is that the suit was served so I'm checking with my process server to see what's going on." *Id*. Mr. Ahmad's understanding was incorrect and that was also the last time there is evidence of communication between Mr. Ahmad and Plaintiff. Indeed, even Mr. Ahmad's brother was having substantial difficulty reaching him. *Id*. at 1. To the Court's knowledge Mr. Ahmad has not communicated with Plaintiff since the February 25, 2020 communication.

This is beyond "inadvertence or mistake of counsel or ignorance of the rules," but an instance of attorney abandonment. *Winters v. Teledyne*, 776 F.2d 1304, 1306 (5th Cir. 1985) (citing 4A C. Wright & A. Miller, Federal Practice and Procedure: 1165 (2d ed. 1987)); *accord Maples*, 565 U.S. at 280–81 ("A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default."); *see also Porter v. State*, 339 Ark. 15, 16-19, 2 S. W. 3d 73, 74-76 (1999) (finding "good cause" for petitioner's failure to file a timely habeas petition where the petitioner's attorney terminated his representation without notifying petitioner and without taking "any formal steps to withdraw as the attorney of record."). As explained in Justice Alito's concurrence in *Holland v. Florida*, 560 U. S. 631, 659 (2010), "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." Further, Justice Alito's reasoning was incorporated into the *Maples* Court's holding:

> under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him. We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control," necessary to lift the [] procedural bar to his federal [litigation].

565 U.S. at 283 (internal citations omitted).

One unusual characteristic in this case is that there is no clear point in time the Court can easily point-to when Mr. Ahmad "abandoned" Plaintiff. Since Mr. Ahmad cannot be located to testify regarding the circumstances surrounding his actions (or lack thereof), the Court will infer Mr. Ahmad was no longer acting as Mr. Hardy's agent shortly the November 24, 2019 deadline to serve CISD. Plaintiff should not be "faulted for failing to act on his own behalf when he lacks reason to believe his attorney[] of record, in fact, [is] not representing him." *Id*. at 283. What made

9

Mr. Ahmad's behavior so injurious was his sporadic communications that would give a lay person the impression that he was still managing their case. Dkt. No. 18 at 1–2. Indeed, Mr. Ahmad's communications are so rare that a six- or seven-month delay between email correspondence would not be unexpected. In view of the presented evidence, the Court finds that Plaintiff has shown that Mr. Ahmad abandoned him. Thus, extending the deadline to serve CISD to August 31, 2021 is both warranted and in the interests of justice.

Furthermore, none of the aggravating factors that generally warrant dismissal are present. *See Thrasher*, 709 F.3d at 514. As to the first factor, Plaintiff's delay is not attributable to his own behavior. His attorney abandoned him. Plaintiff tried for many months to reach out to his counsel only to be misled, further delaying this litigation. As to the second factor, CISD articulates very little prejudice stemming from allowing this lawsuit to progress. CISD's only articulated prejudice is the difficult of locating witnesses and the difficulty of such witnesses remembering the events giving rise to this action. This is generally true with many litigations that span several years and is not particularized to the facts of this case. As to the third factor, the delay was not caused by intentional conduct. There is nothing that suggests Mr. Ahmad's conduct was performed with the intention to delay this proceeding. Nor is there any suggestion that Plaintiff intended to delay this proceeding.

### 2. Timeliness Under 42 U.S.C. § 2000e-5(f)(1)

CISD asserts Plaintiff's Title VII claims are time-barred because Plaintiff failed to bring this lawsuit within ninety days after the EEOC issued its May 13, 2019 notice of right to sue. Dkt. No. 8 at 5. CISD alleges Plaintiff failed to comply with an August 11, 2019 filing deadline for his Title VII claims because Plaintiff originally filed this lawsuit on August 12, 2019, one day past the alleged deadline. Plaintiff counters that the ninety-day period does not toll "on the day the letter

was signed by the EEOC, but rather the date the letter was received through the post." Dkt. No. 10 at 4. Plaintiff argues that "[t]he Fifth Circuit has expressed satisfaction with a range between three and seven days after the date that the right-to-sue letter was issued by the EEOC" as the proper date to begin tolling the statutory ninety-day deadline. Dkt. No. 10 at 4 (internal quotations omitted) (quoting *Morgan v. Potter*, 489 F.3d 195, 196 (5th Cir. 2007).

"The ninety-day period is treated as a statute of limitations." *January v. Tex. Dep't of Criminal Justice*, 760 Fed. Appx. 296, 299 (5th Cir. 2019). "When the parties dispute the date upon which a right-to-sue letter is received, or when the date of receipt is unknown, the Fifth Circuit presumes that the letter was received on or prior to the seventh day after the letter was mailed. *Id*. at 299-300. As discussed above, Plaintiff's original counsel cannot be located and fails to communicate. As such, the Fifth Circuit has advised that this Court should presume the letter was received on the seventh day after the letter was mailed. Thus, Plaintiff's deadline to file was August 18, 2019. Plaintiff, therefore, timely filed suit to assert his Title VII claims.

Even assuming the letter was received on the day it was issued, the ninetieth day (i.e. August 11, 2019) of Plaintiff's statutory filing deadline was a Sunday. Under Federal Rules of Civil Procedure, Plaintiff's filing period "continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). CISD's motion for dismissal of Plaintiff's Title VII claims on that ground should be **DENIED**.

C.     **12(b)(6) Motion to Dismiss Plaintiff's Claims**

On January 11, 2022, the Court ordered Plaintiff to file an amended pleading by January 24, 2022. Dkt. No. 23. Plaintiff has done so.

The January 24 pleading supersedes the previous pleading. *See Uniloc 2017 LLC v. Cardo Sys.*, No. 2:18-cv-00510-JRG, 2019 U.S. Dist. LEXIS 135783, *2 (E.D. Tex Apr. 9, 2019) (citing

*Merritt v. Fogel*, 349 F. App'x 742, 745 (3rd Cir. 2009); *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)). "Unless the amended complaint expressly incorporates the original complaint, the amended complaint completely replaces the original and renders it a legal nullity." *Id*. (citing *In re Vitro Asset Corp.*, 656 F. App'x 717, 722 (5th Cir. 2016)).

In view of Plaintiff's amended pleading, CISD's 12(b)(6) grounds should be **DENIED AS MOOT**.

IV. **CONCLUSION**

Accordingly, the CISD's motion to dismiss (Dkt. No. 8) should be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 3rd day of February, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE