# EXHIBIT 2

# In The Matter Of:

*Christopher B. Hardy vs.*
*Carthage Independent School District*

*Elzie Hicks*
*December 30, 2021*

*CONTINENTAL COURT REPORTERS, INC.-Houston*
*2 Riverway, Suite 750*
*Houston, Texas  77056*
*(713) 522-5080  |  (800) 779-6981*
*www.TexasDepos.com*

Original File 211230EH_ts.txt
**Min-U-Script® with Word Index**

Case 2:19-cv-00277-JRG-RSP   Document 32-3   Filed 02/14/22   Page 3 of 7 PageID #: 256

Christopher B. Hardy vs.                                                                    Elzie Hicks
Carthage Independent School District                                              December 30, 2021

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                       MARSHALL DIVISION

 3   CHRISTOPHER B. HARDY,      )
          Plaintiff,            )
 4                              )
     VS.                        ) CIVIL ACTION NO. 2:19-cv-277
 5                              )
     CARTHAGE INDEPENDENT       )
 6   SCHOOL DISTRICT,           )
          Defendant.            ) JURY DEMANDED
 7
 8   *********************************************************

 9                       ORAL DEPOSITION OF

10                          ELZIE HICKS

11                       December 30, 2021

12                       (Reported Remotely)

13   *********************************************************

14       ORAL DEPOSITION OF ELZIE HICKS, produced as a

15   witness at the instance of the Plaintiff and duly sworn,

16   was taken in the above-styled and numbered cause on the

17   30th day of December, 2021, from 12:57 p.m. to

18   4:44 p.m., via remote conference, before Roland W.

19   Scott, Certified Shorthand Reporter in and for the State

20   of Texas, reported by computerized stenotype machine at

21   No. 1 Bulldog Drive, Carthage, Texas 75633, pursuant to

22   the Federal Rules of Civil Procedure and the provisions

23   stated on the record or attached hereto.
```

Page 2

```
 1                         APPEARANCES

 2
     FOR PLAINTIFF:
 3       Mr. Benjamin F. Foster (via remote)
         BENJAMIN FOSTER, PLLC
 4       808 Travis Street
         Suite 1420
 5       Houston, Texas  77002
         Telephone:  (713)331-5254
 6       Email:  ben@fsfirm.com

 7
     FOR DEFENDANT:
 8       Ms. Andrea L. Mooney (via remote)
         Mr. Dennis J. Eichelbaum (via remote)
 9       Ms. Emma J. Darling (via remote)
         EICHELBAUM WARDELL HANSEN POWELL & MUÑOZ, P.C.
10       5801 Tennyson Parkway
         Suite 360
11       Plano, Texas  75024
         Telephone:  (972)377-7900
12       Fax:  (972)377-7277
         Email:  alm@edlaw.com
13               deichelbaum@edlaw.com
                 ejd@edlaw.com
14

15   ALSO PRESENT:
         Mr. Russell McKean - Zoom Host
16       Mr. Christopher B. Hardy
```

Page 3

```
                             INDEX
                                                          PAGE
Proceedings ..........................................5

ELZIE HICKS

Examination by Mr. Foster ............................5
Examination by Ms. Mooney ..........................105
Further Examination by Mr. Foster ..................137

Signature Page .....................................141

Court Reporter's Certificate .......................142


                           EXHIBITS

EXHIBIT          DESCRIPTION                             PAGE

1        8-page PDF - Copy of letter -                    14
         Re: EEOC Charge No.
         450-2018-00224, Bates CISD
         000001 through 000008

2        1-page PDF - Carthage ISD                        22
         Organizational Chart, 2016-2017

3        1-page PDF - Scott Surratt                       44
         Compensation, 2017-2018

4        2-page PDF - Superintendent                      47
         Compensation, 2016-2017 and
         2017-2018

5        5-page PDF - Safety                              51
         Program/Risk Management,
         04/21/2014

6        3-page PDF - Safety                              53
         Program/Risk Management,
         10/2/2015
```

Page 4

```
                      DEFENDANT'S EXHIBITS

EXHIBIT          DESCRIPTION                             PAGE

1        1-page PDF - Document from Ms.                  109
         Donna Porter, CISD 000315

2        2-page PDF - List of released                   115
         employees, CISD 000021 and 22

3        3-page PDF - CKE policy dated                   125
         10/2/2015, Hardy_000269 through
         271

4        1-page PDF - Email exchange                     125
         between Paul Howe and Steve
         Zurline, CISD 000035

5        1-page PDF - Copy of letter                     128
         dated July 15, 2014, from J.
         Glenn Hambrick to Chris Hardy
```

Case 2:19-cv-00277-JRG-RSP   Document 32-3   Filed 02/14/22   Page 4 of 7 PageID #: 257

Christopher B. Hardy vs.
Carthage Independent School District

Elzie Hicks
December 30, 2021

**Page 5** (12:57:05-12:58:23)

1  PROCEEDINGS
2  **THE REPORTER:** My name is Roland Scott,
3  Texas CSR 2269. I am reporting the deposition remotely
4  by stenographic means from Alvin, Texas. The witness is
5  located at No. 1 Bulldog Drive, Carthage, Texas.
6  **MR. FOSTER:** My name is Ben Foster; and I
7  am counsel for the Plaintiff in this case, Christopher
8  Hardy.
9  **MS. MOONEY:** I'm Andrea Mooney, and I'm
10  counsel for Carthage Independent School District.
11  **MR. EICHELBAUM:** Dennis Eichelbaum,
12  counsel for the Defendant.
13  **MS. DARLING:** Emma Darling, counsel for
14  the Defendant.
15  ELZIE HICKS,
16  having been first duly sworn, testified as follows:
17  **EXAMINATION**
18  **BY MR. FOSTER:**
19  Q. Good afternoon, Mr. Hicks.
20  A. **Good afternoon.**
21  Q. Before we get started, a couple housekeeping
22   matters.
23      Have you ever been deposed before?
24  A. **No.**
25  Q. Okay. And, so, obviously you've never had a

**Page 6** (12:58:28-12:59:22)

1  Zoom deposition, either, right?
2  A. **No.**
3  Q. Okay. So, a couple of deposition ground rules
4   and then --
5  A. **I've been deposed in a Federal case. I've been**
6   **deposed in other cases, like insurance, stuff like that.**
7  Q. Okay. We'll talk about that some more in a
8   minute here; but let's start with just a couple of basic
9   rules for depositions, which are especially important
10   for Zoom depositions.
11      So, the first thing is it's very important
12   that you give audible answers to questions. If you want
13   to say "yes" or you want to say "no," say those words.
14   Don't shake your head and nod your head because that
15   stuff can't be picked up by the court reporter and will
16   never be clear through the camera.
17      Does that make sense?
18  A. **Yes.**
19  Q. It's important in normal depositions but it's
20   extra important in Zoom depositions that you let me
21   finish my question before you answer it and that I let
22   you finish your answer before I ask my next question.
23   So, let's both try to do our best not to talk over each
24   other. Okay?
25  A. **Yes.**

**Page 7** (12:59:23-01:00:27)

1  Q. All right. I want to start by just asking you:
2   What is your role in relationship to the Carthage
3   Independent School District?
4  A. **I'm a Board member at the Carthage Independent**
5   **School District.**
6  Q. Okay. Does that mean you're on the school
7   Board of the school district?
8  A. **Yes.**
9  Q. And that's an elected position, right?
10  A. **Yes.**
11  Q. How long have you served on the Board?
12  A. **Approximately 14 years, 15 years, somewhere in**
13   **there.**
14  Q. How many Board members are there?
15  A. **There are six besides myself.**
16  Q. So, seven total, right?
17  A. **Yes.**
18  Q. Okay. And does that number -- has that number
19   changed over the years; or the whole time you've been on
20   the Board, it's always been seven?
21  A. **Yes.**
22  Q. Okay. And when you said "yes" there, you mean
23   the whole time you've been on the Board, there's always
24   been seven Board members, right?
25  A. **Correct.**

**Page 8** (01:00:28-01:02:02)

1  Q. Okay. Now, you know the Plaintiff, Christopher
2   Hardy; is that right?
3  A. **Yes.**
4  Q. Okay. And Mr. Hardy used to work for the
5   Carthage Independent School District, right?
6  A. **Correct.**
7  Q. Okay. I want to start today -- and I'm going
8   to try to go somewhat in chronological order. So, I
9   want to start today by talking about Mr. Hardy getting
10   hired by Carthage Independent School District.
11      Were you involved in the process of hiring
12   Mr. Hardy?
13  A. **Yes.**
14  Q. Okay. Can you explain what the Board's role in
15   that was versus what the superintendent's role was?
16  A. **The Board's role was to approve for hire**
17   **members that the superintendent brought to us for the**
18   **position that we had agreed to add to the district. The**
19   **superintendent's role was to seek out qualified**
20   **individuals for the position of an RSO officer -- SRO**
21   **officer.**
22  Q. All right. So, I want to talk about this SRO
23   position quite a bit today; but we'll get to that in a
24   minute. I want to start by just talking at a basic
25   level.

---

01:02:02-01:03:12                                          Page 9

1      If I understood your answer, the
2   superintendent found a group of candidates and presented
3   them to the Board; is that right?
4   A.  Yes.
5   Q.  Okay.  And then what exactly was your role?
6   Did the Board pick who got hired; or did they just
7   approve some subset, some group, of those candidates?
8   How did that work?
9   A.  Well, the Board approved who would be qualified
10  for the job.  That was the Board's position on it.
11  Q.  Okay.  Do you have a recollection of how many
12  candidates the superintendent brought to you for this
13  SRO position?
14  A.  It's been such a long time.  I can't exactly
15  recall how many individuals that was brought at this
16  time.
17  Q.  Okay.  But Mr. Hardy was one of the individuals
18  who was presented; is that right?
19  A.  No.  Mr. Hardy was not brought to the Board.
20     Mr. Hardy was recommended by myself and
21  another Board member after the search had initially
22  begun.
23  Q.  Okay.  Why did you recommend Mr. Hardy?
24  A.  After the deliberation that we had had as Board
25  members, we wanted someone who would be qualified not

---

01:03:17-01:04:47                                         Page 10

1   only for working as an officer but someone who had some
2   school experience.  But it was a plus for Mr. Hardy
3   because he had relationships in the community, also.
4   Q.  Did the superintendent present at least some of
5   his own candidates?
6   A.  If I remember correctly, yes, he did.
7   Q.  And at this time the superintendent was a
8   Dr. Glenn Hambrick, right?
9   A.  Yes.
10  Q.  Okay.  Do you recall at the time what
11  Mr. Hambrick's opinion was of whether they should hire
12  Mr. Hardy or not?
13     MS. MOONEY:  Objection.  Form.
14  Q.  (By Mr. Foster) You can still answer the
15  question if you understood it; but if you didn't, I'm
16  happy to rephrase it.
17  A.  I can't answer about his opinion, but I can
18  tell you what he spoke to me was he was not in favor.
19  Q.  And did he explain why he wasn't in favor?
20     MS. MOONEY:  Objection.  Form.
21  A.  Again, I can't speculate what his opinion was;
22  but based on what he told me was about hearsay, that he
23  had heard things on Mr. Hardy.
24  Q.  (By Mr. Foster) Okay.  Was he specific -- did
25  he tell you what he claimed to have heard about

---

01:04:50-01:05:55                                         Page 11

1   Mr. Hardy?
2      MS. MOONEY:  Objection.  Form.
3   A.  Yeah.  He spoke about -- something about
4   Mr. Hardy would mess with young girls or something like
5   that.  It was outrageous what he brought to me, you
6   know; and I just kind of told him I don't know anything
7   about that.
8      And then he spoke to me that if anything
9   happened, you know, it would be held against me.
10  Q.  (By Mr. Foster) Was there anything specific
11  that he brought to your attention?  I mean, did he, you
12  know, identify a specific incident or something he'd
13  heard about in the community; or was it more sort of
14  vague?
15  A.  Just vague.
16     MS. MOONEY:  Objection.  Form.
17     And I'm just going to remind you,
18  Mr. Hicks, anything that was mentioned during closed
19  session, we need to make sure to not answer those
20  questions.  So, just bring that to our attention because
21  that could possibly violate a law with personal
22  responsibility under the law.  So, just anything that is
23  asked of you that was mentioned in closed session, you
24  need to bring that to our attention and not answer those
25  questions.

---

01:05:55-01:07:10                                         Page 12

1      THE WITNESS:  Okay.  Yeah.  But what I
2   stated was --
3      MS. MOONEY:  If it was just a personal
4   conversation, yes.
5      THE WITNESS:  -- personal conversation,
6   yes.
7      MR. FOSTER:  Andrea, I just want to make
8   sure I understand you-all's position on this.  You-all's
9   position is that the witness can't answer any questions
10  about what happened at closed session because why?
11     MS. MOONEY:  Because under the law, if a
12  Board member talks about what occurred in a closed
13  meeting, they have personal liability for that, criminal
14  and civil, which can include a fine, I think, of up to
15  $20,000 and jail time.
16     MR. FOSTER:  Okay.  You don't have to do
17  it right now, but at some point can you send me whatever
18  you think the statutory authority is for that?
19     MS. MOONEY:  Sure.
20  Q.  (By Mr. Foster) So, from what you've said so
21  far, it sounds like Dr. Hambrick was not in favor of
22  hiring Mr. Hardy.  Is that fair?
23     MS. MOONEY:  Objection.  Form.
24  A.  Once again, the personal opinion -- you know, I
25  would say that's your conclusion.

**03:39:55-03:41:28** — Page 101

1     **MS. MOONEY:** Objection.  Form.
2 **A.**  Yes.
3 **Q.**  (By Mr. Foster) And you did, in fact, sign
4  that, right?
5     **MS. MOONEY:** Objection.  Form.
6 **A.**  It was not to sign.  It was to agree with.
7 **Q.**  (By Mr. Foster) Help me out with that.
8     How were you supposed to indicate that you
9  agreed with it?
10 **A.**  Just a school policy that with any progress or
11  any meeting that was in closed session, which was
12  procedure, that it was -- after the situation with
13  Mr. Hardy, it was being read out to the public -- to the
14  Board members as we went into closed session.
15 **Q.**  Do you know why the decision was made to read
16  that policy to the school board?
17     **MS. MOONEY:** Objection.  Form.
18 **A.**  Not for sure, but I have an idea.
19 **Q.**  (By Mr. Foster) What's your idea?
20     **MS. MOONEY:** Objection.  Form.
21 **A.**  Just speculating.
22 **Q.**  (By Mr. Foster) Speculate.
23     **MS. MOONEY:** Objection.  Form.
24 **A.**  It was to cover hisself, I guess.  I don't
25  know.

**03:41:28-03:43:07** — Page 102

1 **Q.**  (By Mr. Foster) When you say "hisself," you
2  mean Hambrick?
3 **A.**  The superintendent.
4 **Q.**  We talked a lot earlier today about how you --
5  when the decision was being made to hire Mr. Hardy,
6  there was a conversation that you had with Mr. Hambrick
7  and some comments that Mr. Hambrick made about some
8  allegations regarding Mr. Hardy and some inappropriate
9  conduct.
10     Do you remember talking about that?
11     **MS. MOONEY:** Objection.  Form.
12 **A.**  Yes.
13 **Q.**  (By Mr. Foster) Was it just you and Hambrick
14  who had that conversation, or was there another member
15  of the school board there with you?
16     **MS. MOONEY:** Objection.  Form.
17 **A.**  When the recommendation was brought up to hire
18  Mr. Hardy, it was not only myself, it was another Board
19  member of Mr. Frank Willis, who also was in a meeting --
20  not meeting -- but was with me when we recommended
21  Mr. Hardy to have an opportunity for the position.
22 **Q.**  (By Mr. Foster) So, this conversation that you
23  had with Mr. Hambrick that we talked about before today,
24  that would have been you, Mr. Hambrick, and Frank
25  Willis, right?

**03:43:10-03:44:51** — Page 103

1     **MS. MOONEY:** Objection.  Form.
2 **A.**  Correct.
3 **Q.**  (By Mr. Foster) So, I'm going to ask a bunch of
4  questions; and my prediction is that your lawyers will
5  instruct you not to answer every single one of them.
6  Okay?  Here we go.
7     Was there a discussion about the decision
8  to terminate Chris Hardy during a closed session of the
9  school board?
10     **MS. MOONEY:** Objection to form and
11  objection to any discussions that were held in closed
12  session and instruction not to respond.
13 **A.**  No comment.
14 **Q.**  (By Mr. Foster) Did Mr. Hambrick --
15  Dr. Hambrick ever discuss during a closed session
16  exactly why he was making the choices he was making to
17  cut the budgets and the way he was cutting them?
18     **MS. MOONEY:** Objection to form and
19  objection to anything that was discussed in closed
20  session and instruction to the witness not to answer.
21 **A.**  No comment.
22 **Q.**  (By Mr. Foster) Did the school board, in closed
23  session, ever discuss the backlash from the community
24  regarding the termination of Chris Hardy?
25     **MS. MOONEY:** Objection.  Form.  And

**03:44:53-03:59:14** — Page 104

1  objection as to anything discussed during closed session
2  and instruction to the witness not to answer.
3 **A.**  No comment.
4 **Q.**  (By Mr. Foster) Did Dr. Hambrick give any
5  public comment that you're aware of regarding the budget
6  cuts?
7     **MS. MOONEY:** Objection.  Form.
8 **A.**  No, not to my -- not that I remember.
9     **MR. FOSTER:** All right.  Give me five
10  minutes.  I'm just about winding up here.  I just want
11  to look over my outline and look through the rest of the
12  exhibits I picked.  I might have a couple more
13  questions, maybe not.  We'll see.  But let's take five.
14     (Recess taken)
15     ==**MR. FOSTER:** Andrea, I want to understand==
16 ==and -- make sure I understand the basis of the school's==
17 ==objection to this witness testifying about matters==
18 ==raised in closed session.==
19     ==I assume that even if I was prepared to==
20 ==eject Mr. Hardy from this call and agree to designate==
21 ==the remainder of this deposition as attorneys' eyes only==
22 ==via stipulation for now, followed up with a protective==
23 ==order in the next couple of days -- the Eastern District==
24 ==standard order is fine -- you still would not allow him==
25 ==to answer these questions, right?==

Case 2:19-cv-00277-JRG-RSP   Document 32-3   Filed 02/14/22   Page 7 of 7 PageID #: 260

Christopher B. Hardy vs.
Carthage Independent School District

Elzie Hicks
December 30, 2021

03:59:16-04:00:09                                                Page 105

1  **MS. MOONEY: Correct.**
2  MR. FOSTER: That's right? Sorry. I
3  didn't hear you.
4  MS. MOONEY: Correct.
5  MR. FOSTER: Okay. Great.
6    In that light, then, Mr. Hicks, I don't
7  have any further questions for you at this time.
8  **EXAMINATION**
9  **BY MS. MOONEY:**
10 Q. Mr. Hicks, I'm going to try to be as succinct
11   as a lawyer can be with you.
12    So, you were asked earlier by counsel
13   whether you agreed to have us as your counsel.
14    Did you want to expand on that a little
15   bit more?
16 **A. Well, when he -- when he spoke to me, I thought**
17   **he was talking about did I have a personal lawyer here.**
18   **I didn't understand the fact that he was talking about**
19   **was I being represented by the school.**
20    **In my school capacity you are the lawyers**
21   **for the school district, and in that capacity you are**
22   **representing me.**
23 Q. Okay. And do you object to us representing you
24   today at this deposition?
25 **A. Not in that position, no.**

04:00:11-04:01:10                                                Page 106

1  Q. In that capacity?
2  **A. Right.**
3  Q. And would you have any of the information that
4   you provided earlier to these questions if not but for
5   your role as a board of trustee -- as a member of the
6   Board of Trustees?
7  **A. State it again.**
8  Q. Would you have any of the answers to the
9   questions that you provided earlier if you were not a
10  member of the Carthage ISD Board of Trustees?
11 **A. No.**
12 Q. So, we talked earlier about Mr. Hardy and that
13  he came in 2014 and at the time there was some thought
14  he may have a contract and then he ended up not having a
15  contract.
16    Do you recall that conversation?
17 **A. Yes.**
18 Q. And that the policy that we discussed, that was
19  actually passed in 2015, the Board of Directors voted on
20  that, correct, because a policy doesn't get passed
21  unless the Board votes on it?
22    MR. FOSTER: Objection. Form.
23    THE REPORTER: A moment, please.
24    Mr. Foster's objection overrode the
25  witness' answer.

04:01:10-04:02:26                                                Page 107

1    (Discussion off the record)
2  Q. (By Ms. Mooney) Do you need me to ask the
3   question again?
4  **A. Yes.**
5  Q. The policy that we discussed from 2015 CKE that
6   was actually passed, the Board had to vote to approve
7   that, correct?
8    MR. FOSTER: Objection. Form.
9  **A. Correct.**
10 Q. (By Ms. Mooney) And did you vote for or against
11  it, or you don't remember?
12 **A. I don't remember.**
13 Q. But the bottom line is Mr. Hardy was considered
14  an at-will employee because he did not have a contract,
15  correct?
16    MR. FOSTER: Objection. Form.
17 **A. At that basis he would have been considered an**
18  **at-will employee.**
19 Q. (By Ms. Mooney) So, let's just say he's Chief
20  of Police; and that's his title. That's what he ended
21  up having as his title.
22    Does Chief of Police have any entitlement
23  under the law to a contract?
24    MR. FOSTER: Objection. Form.
25 **A. Not under the constitutional law; but if it's**

04:02:30-04:03:36                                                Page 108

1  **in Board policy, he is supposed to have a contract.**
2  Q. (By Ms. Mooney) But the Board policy in place
3   in 2015 did not say that he had a contract, correct?
4  **A. In 2015.**
5  Q. Right. And, so, you've been a Board member for
6   how long for this school district?
7  **A. Approximately 14 years.**
8  Q. So, you're familiar with there's types of
9   employees and categories of employees in school
10  districts who are required to have contracts; and there
11  are those that are not required to have contracts,
12  correct?
13    MR. FOSTER: Objection. Form.
14 **A. Correct.**
15 Q. (By Ms. Mooney) And a police officer is not
16  required to have a contract under the law, correct?
17    MR. FOSTER: Objection. Form.
18 **A. Under -- I'll state it again.**
19    **Not under the law -- the constitutional**
20  **law; but as a Board law, if it's implemented in policy,**
21  **he's supposed to.**
22 Q. (By Ms. Mooney) But the 2015 policy that we
23  looked at earlier did not have that -- did not have that
24  in there, correct, that Mr. Hardy was entitled to a
25  contract?